```
         IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MARYLAND
```

|   |   |
|---|---|
| DERRELL LAMONT GILCHRIST | : |
|   | : |
|   | :  Civil Action No. DKC 08-1218 |
| v. | :  Civil Action No. DKC 16-904 |
|   |    Criminal No. DKC 02-0245-001 |
|   | : |
| UNITED STATES OF AMERICA | : |
|   | : |

**MEMORANDUM OPINION**

There are many motions pending in the criminal case against Derrell Lamont Gilchrist, concerning the post-conviction challenges he has mounted to those convictions. All but one of the pending motions will be resolved in this Memorandum Opinion. The final motion, for compassionate release, is not yet ready for resolution.

**I.  Background**

Petitioner was charged in a twelve-count superseding indictment with four armed bank robberies, in violation of 18 U.S.C. § 2113(a) and (d); carjacking, in violation of 18 U.S.C. § 2119; four counts of use of a handgun in the commission of the bank robberies and the carjacking, in violation of 18 U.S.C. § 924(c); conspiracy to engage in two of the bank robberies and the carjacking, in violation of 18 U.S.C. § 371; and possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g).  (ECF No. 4).  Following the denial of his pre-trial

motions – including motions to sever and to suppress identification evidence – the case proceeded to a jury trial on January 7, 2003. The factual background is set forth in a prior Memorandum Opinion. (ECF No. 116). The jury found Mr. Gilchrist not guilty of one robbery and the related handgun charge (Counts 8 and 9), but guilty on all other counts. He was convicted of three counts of armed bank robbery, one count of conspiracy to commit bank robbery and carjacking, two counts of carjacking, one count of felon in possession of a firearm, and four counts of use of a firearm in furtherance of a crime of violence. Three of the firearm counts were predicated on respective counts of armed bank robbery, while the fourth was predicated on the carjacking charge. He was sentenced to an aggregate term of 112 years in prison. The terms of imprisonment are:

| One | Armed bank robbery | 300 months |
| Six | Armed bank robbery | 300 months concurrent |
| Five | Conspiracy | 60 months concurrent |
| Ten | Carjacking | 180 months concurrent |
| Twelve | Felon in possession | 120 months concurrent |
| Three | Armed bank robbery | 60 months consecutive |
| Two | Use of a firearm | 7 years consecutive |
| Four | Use of a firearm | 25 years consecutive |
| Seven | Use of a firearm | 25 years consecutive |
| Eleven | Use of a firearm | 25 years consecutive |
| TOTAL | | 112 years |

The guideline calculation was quite complicated. Based on the numerous groups and enhancements, the adjusted offense level

2

for all counts except the firearm counts was 38. Thus, although he also qualified as a career offender, the offense level remained at 38. The offense level for career offender would have been 34. The criminal history category, however, was affected by his career offender classification, increasing the category from V (based on 12 criminal history points) to VI. The guideline range for either 38/V or 38/VI is 360 months to life. The guidelines for the firearm counts were based on the mandatory minimum terms. Count 2 involved the brandishing of the firearm, resulting in a seven-year mandatory minimum. The other three were deemed second or subsequent and resulted in 25-year mandatory minimum terms for each.

Mr. Gilchrist appealed and ultimately was granted a resentencing. The same sentence was imposed. (ECF No. 38 is the resentencing transcript, although the date is out of line.) Mr. Gilchrist again appealed, and the judgment was affirmed.

## II.  First Motion to Vacate

Mr. Gilchrist filed his first motion to vacate pursuant to 28 U.S.C. § 2255, which, on September 27, 2012, was denied in a 61-page Memorandum Opinion. (ECF No. 116).[1] All of the matters set forth in that Memorandum Opinion are incorporated herein.

---

[1] Prior to the issuance of that Memorandum, Petitioner had filed a motion for judicial notice. (ECF No. 115). He proposed that the court take judicial notice of expert testimony provided in another case regarding duties of counsel in plea negotiation.

In his first motion to alter or amend (ECF No. 118), filed pursuant to Fed.R.Civ.P. 59(e), Mr. Gilchrist asserted that there was manifest injustice in denying his claim regarding the § 924(c) convictions and denying a certificate of appealability. In the petition (ECF No. 76), Mr. Gilchrist argued that 18 U.S.C. § 924(c)(1)(C) was unconstitutional as applied because the fact that it enhanced his mandatory sentences on three of those charges (Counts 4, 7, and 11), namely that they were "second or subsequent" had not been submitted to the jury. The court rejected the contention, finding that he had already raised the issue on direct appeal and could not relitigate it in the habeas proceeding. In this motion, Mr. Gilchrist contends that the United States Court of Appeals for the Fourth Circuit never fully considered his claim on the merits and he should be able to raise it again on habeas review. He also took issue with the procedural default analysis. The second motion to amend or correct (ECF No. 119) sought to supplement with the then recently decided cases of *Alleyne v. United States*, 570 U.S. 99 (2013), holding that any fact that increases a mandatory minimum sentence is an element of a crime, not merely a sentencing factor, and must be submitted to the jury, and *Peugh*

---

Although the docket reflects the motion as pending, it was essentially denied when the court rejected his contention on factual grounds.  (ECF No. 116, at 45-49).  The order accompanying this memorandum opinion will reflect that reality and deny the motion.

*v. United States*, 569 U.S. 530 (2013), dealing with ex post facto violations when current sentencing guidelines provide a higher range than those in effect at the time of the offense. In the motion for summary judgment (ECF No. 125), Mr. Gilchrist asked for entry of judgment because the Government had not responded to the motions and the facts justified relief. The weakness with these assertions is that neither *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (dealing with facts that increase penalty beyond prescribed statutory maximum) nor *Alleyne* are applied retroactively to cases on collateral review. *Jones v. Zych*, 2020 WL 2119889, at *8 (4th Cir. Apr. 23, 2020) (joining "fellow circuits in holding that *Alleyne*, like *Apprendi*, does not announce a watershed rule of criminal procedure, and thus does not apply retroactively to cases on collateral review") (citing *United States v. Sanders*, 247 F.3d 139, 148=51 (4th Cir. 2001) (holding that *Apprendi* does not apply retroactively to cases on collateral review) (footnotes omitted). The Fourth Circuit, in footnote 4, also stated that the application of a second or subsequent conviction finding by a judge without a jury finding does not violate *Alleyne*, citing "*United States v. Bell*, 901 F.3d 455, 467-68 (4th Cir. 2018) (holding that *Alleyne* did not eliminate the '*Almendarez-Torres* [*v. United States*, 523 U.S. 224 (1998)] exception' for facts that establish a prior conviction), *cert. denied*, --- U.S. ---, 140 S.Ct. 123 (2019)."

5

Accordingly, nothing in the motion to alter or amend (ECF No. 118), the second motion to amend or correct (seeking to supplement) (ECF No. 119), nor the motion for summary judgment (ECF No. 125), provides any basis for relief and they will be denied.[2]

### III. Second Motion to Vacate

On March 14, 2016, Mr. Gilchrist filed a second motion to vacate.  (ECF No. 136).  He seeks resentencing without the career offender designation based on vacatur of one of the underlying qualifying convictions per [*Robert*] *Johnson v. United States*, 544 U.S. 295 (2005).[3]  As noted by Judge Bennett:

> In *Johnson v. United States*, the Supreme Court [of the United States] held that a vacatur of a prior state conviction used to enhance a federal sentence constitutes a matter of "fact" that triggers tolling of the one-year limitation under § 2255(f)(4).  544

---

[2]  In the motion to supplement (ECF No. 126), filed April 21, 2014, Mr. Gilchrist brought to the court's attention the case of *Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014), regarding the use of § 2255 to challenge a career offender enhancement when subsequent case law reveals the enhancement was inapplicable to the defendant.  He cited that case in support of his pending Fed.R.Civ.P. 59(e) motion as an example of a fundamental miscarriage of justice cognizable on collateral review.  That motion will also be denied.

[3] The Government's response (ECF No. 138) mistakenly asserts that Mr. Gilchrist must get permission from the Fourth Circuit to file a second or subsequent motion to vacate. See *United States v. Hairston*, 754 F.3d 258, 262 (4th Cir. 2014). The Government also refers to the wrong *Johnson* case.  Mr. Gilchrist's motion to take judicial notice of the two different cases (ECF No. 144) can be denied as unnecessary. Similarly, the motion seeking judicial notice of the vacatur (ECF No. 152) is unnecessary.

6

> > U.S. 295, 319, 125 S. Ct. 1571, 161 L.Ed.2d 542 (2005). Thus, the one-year period for § 2255 review begins running when the state court orders the vacatur. *Id.* at 307, 125 S. Ct. at 1580.
>
> *Johnson v. United States*, 424 F.Supp.3d 434, 440 (D.Md. 2019). He continued, however, to recognize:
>
> > Vacatur alone is not enough to trigger tolling under § 2255(f)(4); a petitioner must act with due diligence in seeking the vacatur of his prior conviction to be eligible for tolling of the one-year limitation. [*Johnson*, 544 U.S.] at 308, 125 S.Ct. at 1580. Accordingly, a court will look to "the date of judgment as the moment to activate due diligence" in seeking a vacatur of a previous state sentence used for enhancement. *Id.* at 309, 125 S.Ct. at 1581.
>
> *Johnson v. United States*, 424 F.Supp.3d at 440.

In this case, Petitioner's 1994 conviction for conspiracy to possess a controlled substance with intent to distribute, for which he received a two-year sentence, all suspended but 9 months, was one of the two predicates for career offender classification. He filed for *coram nobis* on May 20, 2014, many years after his federal conviction. Relief was initially denied at the trial level, but Mr. Gilchrist appealed, and the case was remanded for reconsideration. At a hearing on February 12, 2016, the petition was granted, and the conviction vacated.

The motion was filed in this court promptly after the state court conviction was vacated, but the question remains whether Petitioner was diligent in seeking *coram nobis* in state court. His federal conviction, with the first sentencing in 2003, and

then on remand in 2005, was final after the appellate proceedings were complete.  He did not seek *coram nobis* relief until 2014, many years later.  He asserts two reasons for the delay.  First, he says his attorney led him to believe that challenging this prior conviction would not affect his career offender status, so that he did not know to challenge it.[4]  Second, he asserts that there was an impediment to seeking relief in state court due to his failure to appeal the conviction initially, and that the impediment was not removed until the Maryland legislature changed the statute and the appellate courts held that the change applied retroactively.

In an earlier case, the undersigned considered the impact of the change in Maryland law.  The lengthy discussion in that case will help elucidate the issue in this one.

---

[4] The sentencing transcript (ECF No. 136-7) supports Mr. Gilchrist's characterization of his attorney's advice only to a certain extent.  It is correct that Mr. Sullivan said that Mr. Gilchrist and he had reviewed the PSR together and that it was the first time Mr. Gilchrist had done that with an attorney.  The Government remarked that it would be an unusual sentencing if the court had not inquired at the initial sentencing whether then counsel had reviewed the report with the defendant, and the court agreed.  Mr. Sullivan also said that Mr. Gilchrist wanted to challenge the career offender treatment, but only because he thought the assault with intent to murder conviction should not be used as a predicate.  Mr. Sullivan did say that there were other convictions in Mr. Gilchrist's record that might result in the career offender finding even if the assault with intent to murder conviction were disregarded.  That hardly constitutes advice not to challenge the drug conviction on *coram nobis* in state court.  Obviously, Mr. Gilchrist had the incentive the challenge any and all prior convictions that might be used to enhance his federal sentence.

The Government argues that Petitioner did not act diligently because he failed to file the *coram nobis* petition in the state court "until more than *five years* after entry of judgment in the federal case[.]" (ECF No. 38, at 5-6 (emphasis in original)). Petitioner's response is complicated. He argues that *Holmes v. State*, 401 Md. 429 (2007), initially precluded him from seeking *coram nobis* relief because he had not filed an application for leave to appeal his guilty plea timely. He next argues that although the *Holmes* decision, and thus the restriction on applying for *coram nobis*, was overturned by statute in 2012, this restriction "did not conclusively disappear until July 2015" when the Court of Appeals of Maryland held, in *State v. Smith*, 443 Md. 572 (2015), that the new law "retroactively applies." (ECF No. 40, at 17). Petitioner concludes that because he filed for *coram nobis* relief within a year of *Smith*, his petition is timely. Petitioner's argument mischaracterizes *Holmes*, fabricates a new legal standard, and, otherwise, misses the point.

According to Petitioner, *Holmes* "held that a defendant, like [Petitioner], who did not file a leave for application to appeal the validity of his guilty plea within 30 days of the entry of the plea, waived his right to file a *coram nobis* petition." (ECF No. 40, at 17). In *Holmes*, the Court of Appeals stated, "We hold that if an individual who pleads guilty, having been informed of his right to file an application for leave to appeal from his conviction and sentence, does not file such an application for leave to appeal, a *rebuttable presumption* arises that he has waived the right to challenge his conviction in a subsequent *coram nobis* proceeding." 401 Md. at 445-46 (emphasis added). This presumption can be rebutted by showing that a petitioner was not informed of his rights to challenge a conviction or through "special circumstances." *Id.* at 475. Petitioner has not alleged that this bar ever applied to him, and, therefore, this case may not be relevant.

Petitioner's argument also assumes that a procedural barrier must "conclusively disappear" before a petitioner could be expected to file for relief. (ECF No. 40, at 17). Petitioner cites no support for the use of this phrase, and such a standard would fly in

9

the face of the command that a petitioner use "reasonable diligence in the circumstances." *Gray v. Ballard*, 848 F.3d 318, 322 (4th Cir. 2017) (internal quotation marks omitted). It would seem reasonable diligence would require a petitioner to raise an argument once there is a legitimate basis and not wait for an issue to be conclusively decided.

Even assuming that *Holmes* barred Petitioner's *coram nobis* petition and a procedural bar had to "conclusively disappear," the bar conclusively disappeared on October 1, 2012 when Section 8-401 of the Maryland Criminal Procedure Article went into effect. It states, "The failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error *coram nobis*." Section 8-401 was "an apparent reaction to *Holmes*." *Graves v. State*, 215 Md.App. 339, 350 (2013). The legislative history includes a letter stating "that the 'pernicious decision' in *Holmes* 'must be undone'" and providing language for that purpose "very similar to the language contained in CP § 8-401." *Id.* at 350 n.7. The legislature spoke clearly and precisely and removed the alleged procedural bar. If Petitioner needed more proof, the Court of Special Appeals of Maryland held that § 8-401 applied retroactively in 2013. *Graves*, 215 Md.App. at 352 (2013); *see also Coleman v. State*, 219 Md.App. 339, 349-50 (2014). If a procedural bar ever existed, it was removed well before Petitioner moved for *coram nobis* relief.

Moreover, this argument does not address the actual question of whether Petitioner was diligent from the *date of judgment* such that the statute of limitations should be tolled. *Johnson*, 544 U.S. at 302. Petitioner waited five years from judgment, four years from the legislative change in the law, three years from the intermediate appellate court interpretation of the law, and a year from affirmance by the Maryland Court of Appeals. In the interim, Petitioner took no steps to obtain relief. Petitioner sat on his rights rather than assert them. Accordingly, the discovery rule does not toll the statute of limitations for his habeas petition, and his habeas petition is untimely.

10

*Blake v. United States*, No. 10-cr-0729-DKC, 2018 WL 4679861, at *2–3 (D.Md. Sept. 28, 2018).

The result here is similar.[5] From his sentencing proceedings in 2003 and 2005, Mr. Gilchrist knew that his state court convictions affected his sentencing in federal court and that he had been designated a career offender. While he challenged the federal convictions on appeal and in the first § 2255 petition, he did not seek any state court relief on his prior state court convictions until 2014. As in *Blake*, he has failed to demonstrate due diligence.

Even if the merits are addressed, Mr. Gilchrist would not be entitled to relief. If he no longer qualifies as a career offender, and his criminal history would be reduced to Category V.[6] The guideline range is the same at offense level 38, namely 360 months to life.

In a later motion (ECF No. 143), Mr. Gilchrist seeks to amend to add a contention that the assault with intent to murder

---

[5] In his motion to supplement (ECF No. 165), Mr. Gilchrist supplies the state court records that he says substantiate that he would be subject to the waiver. Like in Mr. Blake's case, that is far from clear, but, even if true, does not cure the failure to have acted once the statute was enacted.

[6] Mr. Gilchrist had 12 criminal history points, resulting in Criminal History Category V, at the time of sentencing in 2005. Even if the two points for the now vacated drug conviction are subtracted, he would have still had 10 criminal history points, and would still be in Criminal History Category V.

conviction no longer qualifies under the guidelines as a crime of violence due to the invalidation of the residual clause as vague.[7] As noted before, the career offender designation did not affect the guideline range. Moreover, the vagueness rulings applicable to the Armed Career Criminal Act are not applicable to the guidelines. *Beckles v. United States*, 137 S.Ct. 886, 890 (2017).

**IV. Third Motion to Vacate**

Mr. Gilchrist is represented by the Public Defender with regard to his challenge to the § 924(c) convictions based on [the other] *Johnson v. United States*, 135 S.Ct. 2552 (2015).

---

[7] A standalone challenge to career offender treatment based on a later invalidated basis would not state a claim cognizable in a § 2255 proceeding:

> The language of § 2255 makes clear that not every alleged sentencing error can be corrected on collateral review. The Supreme Court has instructed that only those errors presenting a "fundamental defect which inherently results in a complete miscarriage of justice" are cognizable. *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (internal quotation marks omitted). We are not convinced that Appellant's pre-*Simmons* career offender designation meets this high bar. Neither Appellant's federal offense of conviction nor his state convictions qualifying him as a career offender have been vacated, he was sentenced under an advisory sentencing scheme, and we are hesitant to undermine the judicial system's interest in finality to classify a Sentencing Guidelines error as a fundamental defect.

*United States v. Foote*, 784 F.3d 931, 932 (4th Cir. 2015)

(ECF Nos. 140; 142; 163)[8]. The motion, however, misstates the underlying crimes of violence as conspiracy to commit bank robbery and carjacking. While he was also convicted of a conspiracy, the predicate crimes of violence were armed bank robbery and carjacking. Carjacking and bank robbery are categorically crimes of violence. *See United States v. Evans*, 848 F.3d 242, 245-48 (4th Cir. 2017) (carjacking); *United States v. McNeal*, 818 F.3d 141, 151-57 (4th Cir. 2016) (bank robbery). Accordingly, the challenges to the § 924(c) convictions on this ground lack merit.

**V. Remaining Motions**

The remaining motions pertaining to the § 2255 issues are moot, and will be denied: motion to compel court to take action (ECF No. 169); motion for ruling (ECF No. 170); motion to consolidate (ECF No. 148); motion for copy work (ECF No. 150)(this material was supplied later); motion to modify stay order and reopen (ECF No. 161); and motion for hearing (ECF No. 162).

**VI. Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order

---

[8] He received authorization to file the petition. (ECF No. 141).

adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden,* 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell,* 537 U.S. 322, 336–38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (quotation marks omitted). As in the earlier Memorandum Opinion, Mr. Gilchrist does not satisfy that standard and a certificate will not issue.

**VII. Motion for Compassionate Release**

More recently, Mr. Gilchrist has filed a motion for compassionate release. (ECF No. 171). He was notified by

14

letter that the Public Defender had been appointed to represent eligible defendants, and two attorneys have entered their appearance on his behalf. The motion will be addressed once counsel have had an opportunity to supplement, if appropriate, and the Government has responded.

## VIII. Conclusion

For the foregoing reasons, the motions to vacate and all related motions will be denied. A separate order will be entered.

                                                  /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge